00-6159.rr



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 00-6159 CR UNGARO-BENAGES

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

CARLA M. KNIGHT,

      Defendant.

_____/

## REPORT AND RECOMMENDATION
## RE: VIOLATION OF SUPERVISED RELEASE

**THIS MATTER** is before this Court on the Government's petition to revoke Defendant's

supervised release. This Court has considered the petition and all pertinent materials in the file.

Hearings were held the week of May 24, 2004 and evidence was presented as was argument of

counsel. The Court requested additional briefing on an issue related to a state statute and that

briefing was received on June 4, 2004.

The request to revoke alleged four violations. The first resulted from an alleged state charge

of grand theft. The second and third involved state charges of identity theft. The fourth was for

failure to pay restitution.

A decision to revoke must be based on a preponderance of the evidence. 18 U.S.C. §3583

(e)(3). The Government presented no evidence to support the first charge. Testimony was received

from the Probation Officer Mr. George, Lenworth Garrick, Joseph Panico, Dr. Gary Berman, the

defendant's daughter, Cierra Wright, and attorney Keisha Holmes, a friend of the defendant. In

1



addition, the deposition testimony of Mary Lee Davis was submitted.

Violation #2 is based on defendant being charged in the state system with Identity Theft based on her use or possession of the identity of Mary Davis. Violation #3 is the same, except that it involves the use or possession of the identity of Gary Berman. With regard to these charges, the Court heard testimony from Mr. Garrick and Mr. Panico, who were both involved in separate aborted attempts by defendant to purchase a $3.7 million house by using, as it applies to these charges, first her "uncle" Gary Berman to finance the transaction, and later her "aunt" Mary Davis for same. Two things are abundantly clear from the evidence: (1) defendant "used" these names (and other ID information, including Social Security numbers) to try to obtain financing; and (2) neither of these people are related to defendant in any way. The Court finds the testimony of both Mr. Garrick and Mr. Panico to be quite credible. The suggestion by the defense that somehow Mr. Garrick was the one who "created" the use of Mr. Berman for the financing is not only despicable, but clearly contradicted by both logic and the evidence.

Mr. Garrick was the first broker defendant contacted regarding financing for the $3.7 million dollar property. He stated that defendant wanted to use other names to obtain the financing but eventually, for the purposes of this matter, she gave him the name of Gary Berman and stated that he was her uncle. When Mr. Garrick needed more information from Mr. Berman to try to obtain the financing, defendant - who was the sole contact with Mr. Garrick - was unable to obtain same and she decided to use her "aunt" Mary Davis instead. Eventually, Mr. Garrick was unable to "do the deal."

There are several problems with the assertion that somehow Mr. Garrick came up with the Berman name: (1) in the first place, if Mr. Garrick was trying to use a name to get the financing

2

done, he wouldn't have needed more information from defendant; (2) he would have used someone who he could have completed the deal with, as that's the only way he would get paid; and (3) the same name was used by defendant with the subsequent broker, Mr. Panico ...unless he, too, created the name and miraculously created the very same name Garrick did. Sadly, defendant's teenage daughter, who testified that Garrick created this "shill" is not worthy of belief. Equally as sad, defendant called a friend, Ms. Kesha Holmes, an alleged member of the Florida Bar, to testify. Her testimony was also unworthy of belief. A comparison of her testimony on page 41, (lines 14-16), with her testimony on page 43 (lines 13-20) highlights the reason for this conclusion. In one place she clearly answers that a shill was going to be used in the transaction (page 41). When this Court questioned her as to the fact that she knew this practice to be illegal, and asked whether as an officer of the Court she discussed this with her friend, she changed her testimony completely (page 43).

The testimony of both Mr. Garrick and Mr. Panico establishes that defendant used the identities of others without their permission. This is further corroborated by the testimony of the real Gary Berman, and by Ms. Davis, by deposition. It is clear that credit reports were prepared as to both Mr. Berman and Ms. Davis without their permission, and based on information furnished by defendant. While it is true that some information was obtained from Ms. Davis legally, it was used for reasons other than that for which it was obtained, and for reasons for which permission was never given.

At the hearing, the Court raised an issue about construction of the state statute under which defendant was charged. Specifically, the Court was concerned that, while the evidence supported a finding that defendant used Mr. Berman's ID without his permission, there was no evidence as to

3

how defendant came into possession of that information.[1] After reviewing the supplemental briefs requested on the subject, the Court finds that the use of someone's ID without permission as in this case, regardless of how one came into its possession, is sufficient to constitute a violation of the statute under which defendant is currently charged.

With regard to the fourth offense - the failure to make restitution - the evidence came exclusively from probation officer George, who testified that defendant paid approximately $2,200 of the $37,500 she was obligated to pay, and her last payment was in March of 2003. He further testified that despite numerous attempts to get certain financial information from defendant, it was not forthcoming. Defendant allegedly bought seven to ten homes during this time, which purportedly were fixed up and sold. She only provided some documentation as to one of those homes. In short, officer George said defendant was evasive and had excuses for not providing the information, but also made no payments after March, 2003. This non-payment becomes even more suspect in light of the uncontroverted evidence that defendant was attempting to purchase a $3.7 million dollar property.

Therefore, for the reasons stated herein, this Court finds, based on a preponderance of the evidence, that defendant is guilty of the offenses charged, with the exception of offense #1- the charge of grand theft.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Ursula Ungaro-Benages, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v.

---

[1]The Court did not have the benefit of Ms. Davis' deposition at that time.

4

Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** this 20th day of July, 2004 at Miami, Florida.

_____
STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE

cc:     Honorable Ursula Ungaro-Benages
        All counsel of record

5