UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 00-6159-CR-UNGARO-BENAGES

UNITED STATES OF AMERICA

vs.

CARLA KNIGHT,

    Defendant.
_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO CORRECT SENTENCE**

THE UNITED STATES OF AMERICA, hereby files this response in opposition to defendant Carla Knight's motion to correct her sentence. In support of its response, the government submits the following:

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**[1]

**A.    The Underlying Criminal Case**

On June 13, 2000, a federal grand jury in the Southern District of Florida returned an indictment charging appellant Carla Knight and codefendant Jana Ballard with conspiracy to commit credit card fraud and to receive payment in excess of $1,000 during any one-year period, in violation of 18 U.S.C. §§1029(a)(5) and (b)(2) (Count 1) (DE:1). Knight and Ballard were further charged with substantive credit card fraud involving amounts in excess of $1,000 during a one-year period, in

---

[1] This factual statement and procedural history were taken, in the main, from the government's brief on appeal.

violation of 18 U.S.C. §§1029(a)(5) and 2 (Counts 2 and 3) (DE:1). The indictment further sought forfeiture of funds in various fraudulent merchant accounts set up by the defendants to facilitate payment to them by credit card providers (DE:1).

Knight pled guilty to Count 1, pursuant to a plea agreement in which the United States agreed to dismiss Counts 2 and 3 and Knight agreed to make restitution in the amount of $37,500 to the victims of her fraud (DE:20, 21). The United States also agreed to recommend a sentencing reduction for acceptance of responsibility and a sentence at the low end of Knight's guideline range. Both sides agreed to recommend an amount of loss of $37,500 and a two-level enhancement for the fact that Knight's offense involved a scheme to defraud more than one victim. Knight agreed to cooperate with the government and to waive her right to appeal her sentence (id.). Knight faced a statutory maximum sentence of seven and one-half years of imprisonment for her offense. See 18 U.S.C. §1029(b)(2).

On November 17, 2000, the district court sentenced Knight to three years' probation, including six months of home confinement, and ordered her to pay restitution in the amount of $37,500 (DE:26). The court did not impose a fine (id.). Among the terms of Knight's probation were that she would not commit another federal, state or local crime, that she would maintain full-time employment and provide complete access to financial information to the probation officer, that she would not engage in self-employment without prior approval of the probation officer, and that she would pay restitution immediately (id.).

**B.    The Probation Violations**

On August 29, 2003, Knight's probation officer filed a petition with the court alleging that Knight had violated (1) a mandatory condition by failing to refrain from a violation of law; and 2) a special condition by failing to pay restitution (DE:58). The first violation resulted from Knight's arrest on July 30, 2003 in Broward County, Florida, for grand theft, in violation of Florida Statute, §§812.014(1)(a),(1)(b) and (2)(a). The Court referred the matter to the Honorable Stephen T. Brown, United States Magistrate Judge, for an evidentiary hearing (DE:67). An amended petition, filed on December 3, 2003, added two further violations of a mandatory condition in that, on October 2, 2003, Knight was charged in Broward County Florida with two counts identity theft, in violation of Florida Statute §817.568(2)(a), for possessing or using the identities of Mary Davis and Gary Berman (DE:79).

**C.    The Revocation Hearing**

On May 24, 25 and 27, 2004, Knight appeared before the magistrate judge for an evidentiary hearing (DE:110,11,112). The government first presented evidence regarding Knight's probation violations by calling Probation Officer Lennox George. George testified that, as a condition of her probation, Knight had been ordered to pay restitution in the amount of $37,500 to Nova Information Services, Inc., that she had only paid $2,200 to date and that the most recent payment, of $100, had occurred 14 months ago, on March 21, 2003 (DE:110:9-10, 20). Knight told George that she was attempting to liquidate some property that her family owned in order to

satisfy the restitution, but she never did (DE:110:10, 38-39). Knight also told George that she was self-employed and that she purchased houses in foreclosure and attempted to improve them in order to sell them at a profit (DE:110:11-12). However, Knight provided only minimal documentation of her business affairs. Specifically, Knight showed proof of her sale of one house, but she did not show George any documents relating to her repairs of the homes or the sale prices such that he could determine how much money she actually earned from this endeavor (DE:110:13-14, 35-36). Initially, Probation Officer George approved Knight's self-employment. Later, however, he told her that she had to seek other means of employment. At first, Knight refused to do so and she questioned the authority of the Probation Office (DE:110:15-17).

The government also called Lenworth Garrick, a mortgage broker employed by Investors of America, who had met Knight in April 2003 when Knight sought to obtain a mortgage in her brother's name for property that she wanted to purchase in the Las Olas area of Fort Lauderdale that was valued at $3.7 million (DE:110:40-44). When Garrick advised Knight that her brother was not sufficiently credit-worthy, she said that her uncle, Gary Berman, would apply for the loan (DE:110:44-45). Because Berman was out of town, Knight provided Garrick with various identifying information on Berman, including his address and social security number (DE:110:45-47). Garrick ran a credit check with the information provided by Knight (DE;110:49-50, 57-58, 61). However, Garrick requested additional information

regarding Berman, such as profit and loss statements and bank statements, which Knight never produced (DE:110:53-54, 62-63). Wright then sought to obtain another property through Mary Davis who, Knight claimed, was her aunt, and she applied for financing from Garrick's company, submitting a credit report on Davis. Because the social security number for Davis was an obvious fake (it was sequentially numbered 1 through 9), Garrick terminated his dealings with Knight (DE:110:63-65).

Knight also approached Joseph Panico, whom the government called to testify at the revocation hearing (DE:110:84). Panico was a mortgage broker with Intracoastal Mortgage, and Knight applied for a mortgage to purchase property for $3.7 million in the Las Olas area of Fort Lauderdale on behalf of Gary Berman whom Knight again claimed was her uncle (DE:110:85-86, 90). The buyer listed on the real estate contract was "Carla Knight and/or assigns" (DE:110:100). Knight gave Panico Berman's social security number. Panico advised Knight that the application, which had an outdated credit report on Berman, was inadequate (DE:110:91-93). A week later, Knight submitted an application for her aunt, Mary Davis (DE:110:91, 94, 98). When Panico called the telephone number listed for Davis, the person who answered identified herself as Davis and authorized Panico to check her credit history (DE:110:94, 103). A week after that, someone from an agency known as Crimes Against the Elderly in Fort Lauderdale called Panico and asked why he had run a credit check on Davis. Apparently Davis was irate because she had not applied for a mortgage (DE:110:95).

5

The probation officer, Lennox George, who was recalled to testify, stated that when he learned that Knight had been arrested on state charges, he met with her and she denied guilt of any of the charges. She gave George a driver's license for Gary Berman in Plantation, Florida, whose date of birth was June 14, 1932 (DE:110:116-18). Knight also gave George a contract between Knight and Berman (DE:110:118, 121).

Gary Berman, owner of an eye care business in Miami Lakes, Florida, who resided in Pembroke Pines, testified that the social security number that Knight had given to Panico was indeed his social security number was ████████, that he did not know Carla Knight, that he had never attempted to purchase property in Fort Lauderdale, and that he had never applied for a mortgage regarding such property (DE:111:3-6). When presented with various documents bearing his name that had been utilized by Knight, such as a credit report and bank records, he did not recognize them (DE:111:5-6, 10-13).

Knight presented the testimony of two witnesses, her 16-year old daughter, Cierra Wright (DE:112:19-20), and Kesha Holmes, an attorney (DE:112:29 ).Wright testified that she was present in Garrick's office with her mother on one occasion when Garrick said that her uncle's credit was not good enough and that he, Garrick, had a "shell" that she could use to "carry the deal" (DE:112:22). Wright identified her uncle as Carl Knight (id.). She did not have an uncle named Gary Berman (DE:112:24). Knight later explained to Wright that a "shell" is someone who allows

6

his credit to be used with his permission in exchange for compensation (DE:112:28).

Kesha Holmes was present at a meeting between Knight and Garrick and she did not overhear Knight refer to Gary Berman as her uncle (DE:112:35, 38). At one point, Holmes responded "yes" to the court's question of whether Knight had told Holmes "that a shell was going to be used to do this closing" (DE:112:41). After the court questioned Holmes as to whether she was an officer of the court and a member of the Florida Bar, Holmes denied that Knight had told her that a "shell" would be used in the transaction (DE:112:43).

The parties deposed Mary Davis at her home due to her illness and inability to appear in court (see DE:110:3, 123-27). Davis, 80 years old and legally blind, lived alone in an apartment, paying $106 per week in rent and receiving $584 per month in social security (Depo. Tr. at 5-6, 12-13). Knight, who was not related to Davis, owned a house across the street from Davis (id. at 7). Davis came to know Knight approximately one year previously when Knight sought to evict a tenant who was a friend of Davis (id. at 7-9). After that incident, Davis inquired whether Knight might know about a house subject to foreclosure that Davis might purchase. Knight responded that the price would be $10,000 to $15,000 and that she would need Davis' credit and social security number (id. at 10). Davis told Knight that she had good credit and she gave Knight her social security number which was ▮▮▮▮▮ (id. at 11). Davis did not give Knight permission to use her social security number or to check her credit for any purpose other than to find a house subject to

foreclosure for Davis to purchase (id. at 13, 17). Davis did not tell Knight that she wanted to purchase a parcel of property for over $3 million (id. at 14). Davis did not authorize Lenworth Garrick or Joseph Panico to check her credit rating or to use her social security number (id. at 16-17).

### D.      The Magistrate Judge's Report and Recommendation

At the conclusion of the evidentiary portion of the revocation proceedings, the government sought revocation on three of the four violations, namely, the second violation, alleging Knight's failure to pay restitution, and the third and fourth violations, alleging identity theft with respect to Mary Davis and Gary Berman. The government agreed with the magistrate judge that no evidence had been presented that Knight had committed grand theft, the subject of the first violation (DE:112:57-58). The magistrate judge ordered the parties to submit legal memoranda on the question of whether Knight's use of the identities of Davis and Berman constituted the crime of identity theft in violation of Florida law, as the petition for revocation had charged (DE:112:58-62; see DE:79).

In response to the court's order, the government submitted a memorandum stating that, pursuant to Fla. Stat. 817.568(2)(a), a person who "willfully and without authorization fraudulently uses, or possesses with intent to fraudulently use, personal identification information concerning an individual without first obtaining that individual's consent, commits the offense of fraudulent use of personal identification information," a third degree felony (DE:106). The government argued that it was

irrelevant how the defendant obtained or procured the victim's identification information (id.). The defense submitted a memorandum arguing that Knight had not violated the statute (DE:105).

In a Report and Recommendation issued on July 21, 2004, the magistrate judge summarized the evidence that had been introduced at the revocation hearings, finding the testimony of Lenworth Garrick and Joseph Panico to be credible and finding not credible the testimony of Knight's daughter and of her friend, attorney Kesha Holmes (DE:113). The magistrate judge found that the testimony of Garrick and Panico established that Knight had used the identities of Gary Berman and Mary Davis without their permission, and that both Berman and Davis had corroborated Garrick's and Panico's testimony (id.). Moreover, after reviewing the legal memoranda submitted by the parties, the magistrate judge concluded that Knight had violated the Florida statute with respect to the identification information of Berman and Davis, as alleged in the revocation petition (id.). The magistrate judge also concluded that Knight had failed to pay restitution, as charged in the second violation and as testified to by her probation officer, Lennox George (id.).

E.    **The District Court's Order Revoking Probation and Imposing Sentence**

Knight did not file any objections to the magistrate judge's report and recommendation. On August 6, 2004, the district court, upon a de novo review of the record, adopted the magistrate judge's report and recommendation and granted the government's petition to revoke Knight's supervision (DE:118). On April 11,

9

2005, the district court, sua sponte, vacated its order adopting the magistrate judge's Report and Recommendation (DE:125) and, on June 3, 2003, the court held a hearing at which it stated that it had erroneously referred the matter to the magistrate judge (DE:132).

At the June 3rd hearing, the district court inquired of the parties whether it could consider the evidence presented to the magistrate judge, including the deposition from Davis (DE:132:2). The prosecutor stated that he had no objection (DE:132:3). Defense counsel stated that Knight wanted the court to "just go with the previous findings of the magistrate judge and just accept his findings, and we hope that you would do that for us" (DE:132:3). The court then inquired how the parties would feel "if the Court ruled consistent with what Judge Brown had ruled," and both sides requested that the court do so (DE:132:3-4). Accordingly, upon a de novo review of the record, the district court revoked Knight's probation on the same bases recommended by the magistrate judge (DE:132:4).

The court proceeded to consider the sentence to be imposed on Knight, noting that the Probation Office had recommended four years of imprisonment and that the guideline range in Chapter Seven of the Guidelines Manual was four to ten months of imprisonment. See USSG §7B1.4(a). Specifically the court stated:

> Probation, as we all know, is recommending four years incarceration, and the guidelines are much lower than that. The guidelines are four to ten months.

10

>I have to say that this situation is pretty appalling. But what do you want to say on Ms. Knight's behalf, Ms. Kassebaum?

(DE:132:4).

Defense counsel stated that Knight was "extremely remorseful" and that, while she "may have made a mess of her life," she had raised two daughters one of whom, a 15-year old, would suffer from her mother's imprisonment (DE:132:5-7, 17). The Court noted that Knight had had plenty of opportunities to explain to the probation officer that the homes she was "flipping" were owned by her brother and that the profits from such sales were not available to her to make restitution, but that she had failed to provide any such explanation (DE:132:6-7).

Defense counsel claimed that there was a "personality conflict" between Knight and her probation officer and insinuated improper conduct toward Knight by the probation officer, but counsel presented no evidence in support of such allegations (DE:132:7-15). Subsequently, Knight merely asked the Court to consider letters written on her behalf and the Court took a brief recess to read the letters (DE:132:15-17).

The undersigned Assistant United States Attorney described Knight's conduct, especially toward Mary Davis, who was elderly and infirm as "despicable," and argued that it "cries out for a very harsh sentence, considering the fact that she was given every chance" by having been initially sentenced by Judge Ferguson to a

probationary term (DE:132:20-22). He further noted that Knight continued to deny her improper use of Davis' and Berman's identities (DE:132:22-23).

Knight's mother and daughter spoke briefly to the court on Knight's behalf and asked the court for leniency (DE:132:23-25). Knight addressed the court, stating that she was sorry (DE:132:25-26). Curiously, she also stated, "The first time, in 2000, when I was sentenced on the underlying case, I had no idea. I did no jail time. Nothing really happened" (id.). The court sentenced Knight to 48 months of imprisonment, giving the following reasons:

> I have to say that I am not usually exposed to conduct which is this callous. As long as I have sat here as a judge, this kind of – I really don't know what other word to use to describe it – callous behavior is just not something that is a typical occurrence.
>
> You were on probation. Judge Ferguson gave you a break. But still probation has punitive aspects to it. I don't quite understand why you wouldn't have gotten the message. He did order you to pay restitution. It was substantial restitution. That meant you had to get together with the probation officer, you had to work out some kind of payment arrangement. I mean, there were plenty of opportunities to get the message. I don't know what we have to do to you, Ms. Knight, to get the message through.
>
> There were lots and lots of opportunities to get the message. So, I'm not too impressed with the argument that, well, he only put me on probation, so I didn't get the message.
>
> And then to make – and your behavior during probation, whether you like Mr. George or not, was completely unacceptable. To not meet with the probation officer, to not keep your appointments, to not be responsive to their request for restitution, today you come in here and say, well, I didn't own the houses, my brother owned the houses, when there's nothing in the record to reflect you ever took that position with

> the probation officers, all those things just indicate to me that you just thought you could get away with whatever you wanted to do.
>
> And then you get toward the end of your probation and you steal the identity of a half-blind elderly woman. I mean, that's amazing. That's amazing, Ms. Knight. And, so, I really don't think there's really even much to talk about here.
>
> You may be a good mother. I'll give you that. And, obviously, your daughter loves you, and I'm sure your other daughter depends on you. But you cannot behave one way in your house and another way in society, and you have really offended society by what you have done. So, I am revoking your probation and I am sentencing you to 48 months.

(DE:132:26-27). Significantly, in pronouncing sentence, the court stated, in relevant part: "The court has determined that a sentence within the guideline range does not adequately address your total disregard for your probation and the serious nature of the new offense conduct" (DE:132:27-28).

The court did not impose a period of supervision to follow imprisonment, but made it clear that Knight was responsible for the restitution still owing to the victim and that the United States Attorney's Office would be responsible for collection of the restitution (DE:132:28-30).

## **MEMORANDUM OF LAW AND ARGUMENT**

In her motion, defendant Knight has alleged something akin to a violation of Apprendi v. New Jersey, 530 U.S. 466 (2000). However, pursuant to 18 U.S.C. §3565, the court may sentence a probation violator "under subchapter A," which consists of the general sentencing provisions of 18 U.S.C. §§3551-3559. See

United States v. Cook, 291 F.3d 1297, 1299 (11th Cir. 2002); United States v. Chavez, 204 F.3d 1305, 1313 (11th Cir. 2000). The court was thus authorized to sentence Knight up to the statutory maximum sentence of seven and one-half years for her underlying offense, a violation of 18 U.S.C. §§1029(a)(5), (b)(2). Her sentencing range under the advisory sentencing guidelines in Chapter Seven was 4-10 months' imprisonment based on the fact that the second and third violations (identity theft) were Grade B violations, consisting of conduct constituting a federal, state or local offense punishable by a term of imprisonment exceeding one year. See USSG §§7B1.1(a)(2), 7B1.4. The fourth violation, failure to pay restitution, was a Grade C violation, constituting a violation of any other condition of supervision, with a 3-to-9 month range. See §§7B1.1(a)(3), 7B1.4. See also §7B1.1(b) (the grade of the violation is determined by the violation having the highest range). Consequently, there was no enhancement as referred to in Apprendi.

As this Court is well aware, the burden of proof in such a trial in the state case against Ms. Knight is "beyond a reasonable doubt." However, in a probation revocation hearing the government need not prove its case by a beyond a reasonable doubt. United States v. Francischine, 512 F.2d 827 (5th Cir.) ("Evidence that would establish guilt beyond a reasonable doubt is not required to support an order revoking probation. . . . All that is required is that the evidence and facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation."), cert. denied, 423 U.S.

931 (1975). Thus, a smaller quantum of evidence is needed for the federal government to prevail in such a revocation hearing.

In the instant case, the government did not predicate its request for revocation upon a state court conviction. Instead, the government proved the violations of law alleged in the petition by presenting testimony and documentary evidence at the hearing before the magistrate judge. As stated above, both parties agreed that the district court could and should consider the magistrate judge's findings from that hearing in reaching its decision concerning revocation. The presentation of evidence and this court's decision to revoke Knight's probation were independent of the posture of the parallel case in state court, and the disposition of the state case is of no moment in this matter.[2]

Moreover, even if defendant Knight had been first tried by the State of Florida and acquitted there, the federal government still could have rightfully proceeded with its case to revoke her supervised release based on the same set of facts. This is so because the federal government is not bound by a jury's determination of the facts presented, or not presented, in a state trial.

---

[2] It is likely that the disposition of the state case was influenced by the outcome of the instant case.

15

**CONCLUSION**

Since defendant Knight's violation was proved before this court and not based upon any presumed outcome of the state court case, her claim that the dismissal of that case should undercut the sentence in the case at bar is without merit.

WHEREFORE, the government respectfully requests that this Court deny defendant Carla Knight's motion to correct her sentence.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

By: /s/ *Harry C. Wallace, Jr.*
HARRY C. WALLACE, JR.
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 623946
99 NE 4th St.
Miami, FL 33132
Tel: (305) 961-9302
Fax: (305) 530-7976

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 1, 2008, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, and a copy was sent via United States mail to Carla Knight, Reg. No. 55343-004, Community Corrections Office, 401 North Miami Avenue, Miami, Florida 33128.

/s/ *Harry C. Wallace, Jr.*
Harry C. Wallace, Jr.
Assistant United States Attorney